**JOHN F. MCGRORY, JR.,** OSB #813115
johnmcgrory@dwt.com
**MARK P. TRINCHERO**, OSB #883221
marktrinchero@dwt.com
**BLAKE J. ROBINSON**, OSB #084543
blakerobinson@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201
Tel:    (503) 241-2300
Fax:    (503) 778-5299

Attorneys for Plaintiff Comcast of Oregon II, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COMCAST OF OREGON II, INC.**, an Delaware corporation,<br><br>                                  Plaintiff,<br><br>         v.<br><br>**CITY OF BEAVERTON**, an Oregon municipal corporation,<br><br>                                  Defendant. | Case No. 3:20-cv-01225-SI (lead case)<br>Case No. 3:20-cv-01528-SI (trailing case)<br><br>PLAINTIFF COMCAST OF OREGON II, INC.'S ANSWER TO DEFENDANT'S COUNTERCLAIMS |

In reply to Defendant's Counterclaims, Plaintiff Comcast of Oregon II, Inc. alleges:

1.

The City's counterclaims contain an "Introduction" that consists of statements that are not allegations and to which no response is required. To the extent a response is required, Comcast denies the statements in the Introduction.

Page 1 – PLAINTIFF COMCAST OF OREGON II, INC.'S ANSWER TO DEFENDANT'S COUNTERCLAIMS

2.

Comcast denies the allegation in paragraph 80 that the City is entitled to the fees that it is seeking in its counterclaims and denies that Comcast has refused to pay any fee that the City may lawfully impose or that Comcast lawfully owes. The remaining allegations in paragraph 80 are jurisdictional allegations to which no response is required. To the extent a response is required, Comcast admits that this Court has diversity jurisdiction and supplemental jurisdiction over the City's counterclaims.

3.

Comcast admits only that the City enacted the ROW Ordinance (No. 4684) and that it is codified as Beaverton City Code, chapter 4.15. The remaining allegations of paragraph 81 are legal conclusions for which no response is required. To the extent that a response is required, Comcast denies the remainder of the allegations of paragraph 81.

4.

Comcast admits that it has provided cable television to Comcast customers within the City since 2002, that it has paid the City for use of the City's rights-of-way pursuant to and consistent with the Cable Act, and that technology developed which allowed Comcast to provide voice and Internet services within the City using those same rights-of-way. Comcast denies the remainder of the allegations of paragraph 82.

5.

Comcast admits that it provided comments and asked questions prior to the enactment of the ROW Ordinance in 2016, and denies the remainder of the allegations of paragraph 83.

6.

Comcast admits that it has paid a franchise fee for use of the City's rights-of-way in an amount equal to the federal statutory limit of five percent of Comcast's gross revenues derived from the provision of cable services. Comcast admits that for a period of time following the enactment of Beaverton City Code, chapter 4.15, it did not pay the City the ROW Ordinance fee, but Comcast denies that it has not paid the City in full any lawfully charged rights-of-way fee for its communications services. Comcast denies the remainder of the allegations of paragraph 84.

7.

Comcast admits the allegations of paragraph 85.

8.

Comcast admits the allegations of paragraph 86.

9.

With respect to paragraph 87, Comcast admits that the "Home Rule Amendment" to the Oregon Constitution was adopted in 1906. The remaining allegations in paragraph 87 are legal conclusions, to which no response is required. To the extent a response is required, Comcast denies the allegations.

10.

In response to the allegations in paragraph 88, Comcast admits that the quoted language appears in Chapter 2, section 4 of the Charter for the City of Beaverton.

11.

The allegations of paragraph 89 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

12.

The allegations of paragraph 90 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

13.

The allegations of paragraph 91 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

14.

The allegations of paragraph 92 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

15.

The allegations of paragraph 93 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

16.

The allegations of paragraph 94 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

17.

The allegations of paragraph 95 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

18.

The allegations of paragraph 96 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

19.

The allegations of paragraph 97 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

20.

The allegations of paragraph 98 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

21.

Comcast admits that it has paid a franchise fee for use of the City's rights-of-way in an amount equal to the federal statutory limit of five percent of Comcast's gross revenues derived from the provision of cable services. The remainder of the allegations of paragraph 99 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

22.

The allegations of paragraph 100 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

23.

Comcast denies that it has not paid the City in full any lawfully charged rights-of-way access fee for its communications services. The remainder of the allegations of paragraph 101 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

24.

The allegations of paragraph 102 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

25.

With respect to paragraph 103, Comcast denies that it owes any payments the City may lawfully impose on Comcast for use of the City's rights-of-way to provide voice and Internet services for the period of October 1, 2016 to June 30, 2019.

26.

Comcast admits that it paid, under protest and reserving all rights and defenses, the City's right-of-way fees assessed pursuant to the City's right-of-way ordinance in the amounts of $327,988.35 for the period July 1, 2019 to September 30 2019; $354,651.06 for the period October 1, 2019 through December 31, 2019; and $380,666.19 for the period January 1, 2020 to March 31, 2020. Comcast denies the remainder of the allegations of paragraph 104.

27.

Comcast admits that the City has demanded payment of amounts the City claims to be in arrears, and that those amounts have not been paid by Comcast. Comcast denies the remainder of the allegations of paragraph 105.

ANSWER TO FIRST COUNTERCLAIM

(ORS 30.315)

28.

With respect to paragraph 106, Comcast re-alleges paragraphs 1-27 of this Answer as set forth above.

29.

The allegations of paragraph 107 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

30.

The allegations of paragraph 108 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

31.

Comcast denies the allegations of paragraph 109.

32.

Comcast denies the allegations of paragraph 110.

## ANSWER TO SECOND COUNTERCLAIM

### (INTEREST)

33.

With respect to paragraph 111, Comcast re-alleges paragraphs 1-32 of this Answer above.

34.

The allegations of paragraph 112 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

35.

The allegations of paragraph 113 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

36.

The allegations of paragraph 114 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

37.

Comcast denies the allegations of paragraph 115.

38.

The allegations of paragraph 116 contain legal conclusions for which no response is required. To the extent a response is required, Comcast denies the allegations.

39.

Comcast denies the allegations of paragraph 117.

## ANSWER TO THIRD COUNTERCLAIM

## (BREACH OF CONTRACT)

40.

With respect to paragraph 118, Comcast re-alleges paragraphs 1-39 of this Answer above.

41.

Comcast denies the allegations of paragraph 119.

42.

Comcast denies the allegations of paragraph 120.

43.

Comcast denies that the City is entitled to any of the relief that it requests in its counterclaims.

44.

Except as expressly admitted above, Comcast denies every allegation in the City's counterclaims.

AFFIRMATIVE DEFENSES TO COUNTERCLAIMS

FIRST AFFIRMATIVE DEFENSE

(FAILURE TO STATE A CLAIM)

45.

Each of the City's claims fails to state a claim for which relief can be granted.

SECOND AFFIRMATIVE DEFENSE

(THE ROW ORDINANCE IS PREEMPTED BY THE CABLE ACT AND
THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION)

46.

Comcast and the City are parties to a contract entitled "Cable Television Franchise Agreement Between the Jurisdictions participating in the Metropolitan Area Communications Commission and Comcast of Oregon II, Inc.," dated June 10, 2015 (the "Franchise") and effective on or about July 15, 2015. The Franchise was negotiated by the Metropolitan Area Communications Commission and was adopted by the City by ordinance. Only Comcast and the City are parties to the Franchise. The term of the Franchise and all rights, privileges, obligations, and restrictions pertaining thereto is from July 15, 2015 through June 30, 2025.

47.

The Cable Act has been codified as Title VI of the Communications Act of 1934, as amended (the "Act"), 47 U.S.C. §§ 521-573. Under Title VI, Comcast's rights under the Franchise include the right to provide non-cable services over Comcast's cable systems. Section 624 of the

Cable Act, codified at 47 U.S.C. § 544, provides that a "franchising authority may not regulate the services, facilities, and equipment provided by a cable operator except to the extent consistent with [Title VI of the Act]," and "may not . . . establish requirements for video programming or other information services." *Id.* § 544(a) & (b)(1).

48.

In 2019, the FCC issued an order interpreting relevant provisions of the Cable Act. *Implementation of Section 621(a)(1) of the Cable Communications Policy Act of 1984 as Amended by the Cable Television Consumer Protection and Competition Act of 1992*, MB Docket No. 05-311, Third Report and Order, 34 FCC Rcd. 6844 (2019) (the "621 Order"). In the 621 Order, the FCC clarified that the Cable Act "preempts any state or local regulation of a cable operator's non-cable services that would impose obligations on franchised cable operators beyond what Title VI of the Act allows." *Id*. ¶ 7. The FCC emphasized that its "conclusions regarding the scope of [local franchising authorities'] authority to regulate incumbent cable operators' non-cable services, facilities, and equipment follow from the statutory scheme," and expressly repudiated the Oregon Supreme Court's contrary analysis of the Cable Act in *City of Eugene v. Comcast of Oregon II, Inc.*, 359 Or. 528, 375 P.3d 446 (2016). 621 Order ¶ 65.

49.

The City granted the Franchise pursuant to the Cable Act. The Franchise expressly grants Comcast "authorization to make lawful use of the Public Rights of Way within the Franchise Area to construct, operate, and repair a Cable System for the purpose of providing Cable Services[.]" Franchise § 2.1(A).

50.

As clarified by the 621 Order, all cable franchises granted after the enactment of the Cable Act, including the Franchise, authorize a cable operator to provide cable and non-cable services over its cable systems as part of the cable operator's franchise grant of operating authority. 621 Order ¶¶ 64-79. By operation of law, therefore, the Franchise authorizes Comcast to provide non-cable services over its cable system as part of Comcast's original grant of operating authority and in consideration of the payment of "franchise fees" to the City (described below).

51.

Pursuant to the Franchise and the Cable Act, as compensation for the use of the Public Rights-of-Way ("ROW"), Comcast collects from customers and pays the City franchise fees in the amount of five percent of Comcast's gross revenues derived from the provision of cable services within the City ("Franchise Fee"). Franchise, ¶ 3.1(A).

52.

The Franchise Fee is the maximum allowed under 47 U.S.C. § 542(b), which provides that "[f]or any twelve-month period, the franchise fees paid by a cable operator with respect to any cable system shall not exceed 5 percent of such cable operator's gross revenues derived in such period from the operation of the cable system to provide cable services."

53.

In 2016, the City enacted Ordinance No. 4684, an ordinance relating to utility facilities in the City's rights-of-way (the "ROW Ordinance"). The ROW Ordinance is codified as Chapter 4.15 of the Beaverton City Code. The ROW Ordinance requires persons that own or use

facilities in the ROW for provision of utility services, including communications services, to pay the City a separate ROW fee for every service provided using the ROW.

54.

In the 621 Order, the FCC conclusively interpreted the Cable Act as permitting service providers like Comcast to use their franchised cable systems to deliver non-cable services as part of the provider's contractual rights under existing franchises with municipalities such as the City, and without the imposition of any additional authorization or fee requirements under any other source of state or local regulatory authority.  621 Order ¶¶ 64-79.  The relevant provisions of the Cable Act were enacted in 1984, and therefore the FCC's conclusive interpretation applies both prospectively and retroactively.

55.

The ROW Ordinance imposes additional obligations that Comcast must satisfy in order to exercise its existing right to provide non-cable services in the City through its franchised cable system, a right that Comcast is already guaranteed by operation of the Franchise as properly construed under the Cable Act.

56.

As a result, the ROW Ordinance conflicts with, and is preempted by, the Cable Act and the Supremacy Clause of the United States Constitution, and is in violation of the City's obligations under the Franchise pursuant to federal law.  Therefore, the ROW Ordinance is, and has been from its initial effective date, unlawful, null, and void.  Thus, Comcast was not required to pay the ROW fees that the City seeks in its First Counterclaim, and the interest that the City seeks in its Second Counterclaim never accrued.

THIRD AFFIRMATIVE DEFENSE

(WAIVER)

57.

Comcast provides numerous services over its cable system, including voice and broadband services. In doing so, Comcast uses its cable system to compete with other communications providers, including incumbent local exchange carriers ("ILECs") that provide competing voice and broadband services.

58.

An Oregon statute, ORS 221.515, caps the amount that cities in Oregon can charge ILECs for use of local rights-of-way, limiting such charges to seven percent of local dial tone revenues. This limitation does not apply to competitive providers of communications services, including Comcast.

59.

Consistent with ORS 221.515, the City assesses its five percent ROW fee on ILEC local dial tone revenues only, while purporting to assess Comcast five percent of gross revenues derived from not only local voice services but all other non-cable services, including broadband and other services.

60.

As a result, the ROW Ordinance is discriminatory and creates a competitive disparity for Comcast, as compared with the ILEC with which Comcast competes in Beaverton, namely Frontier Communications Northwest, LLC dba Ziply Fiber.

61.

When the ROW Ordinance was first adopted, Comcast met with officials from the City, including the City's mayor, to discuss these anti-competitive effects of the ROW Ordinance, as applied to Comcast. The City officials assured Comcast that the City would not enforce the ROW Ordinance against Comcast until the City had eliminated the anti-competitive effects that the ROW Ordinance had on Comcast.

62.

The City never eliminated the ROW Ordinance's anti-competitive effects on Comcast.

63.

The City waived any right it had to collect the ROW Ordinance fees from Comcast.

FOURTH AFFIRMATIVE DEFENSE

(ESTOPPEL)

64.

Relying on the statements the City made as alleged in paragraph 61 above, Comcast did not pass through to its customers the ROW Ordinance fees that the City now claims Comcast owes. The City is estopped from enforcing the ROW Ordinance against Comcast based on the statements that the City made as alleged in paragraph 61 above.

FIFTH AFFIRMATIVE DEFENSE

(UNCLEAN HANDS)

65.

The City's counterclaims are barred because the City has unclean hands, based on the conduct alleged in paragraphs 61 to 62.

### SIXTH AFFIRMATIVE DEFENSE

(*IN PARI DELICTO*)

66.

The City's counterclaims are barred by the *in pari delicto* doctrine, based on the conduct alleged in paragraphs 61 to 62.

### SEVENTH AFFIRMATIVE DEFENSE

(THE ROW ORDINANCE IS PREEMPTED BY 47 U.S.C. § 253 AND THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION)

67.

47 U.S.C. § 253 prohibits fees that are discriminatory or have an anti-competitive effect.

68.

For the reasons described in paragraphs 57 to 60, the ROW ordinance is discriminatory and creates a competitive disadvantage for Comcast.

69.

Because the ROW Ordinance is discriminatory and creates a competitive disparity for Comcast, it conflicts with, and is preempted by, 47 U.S.C. § 253 and the Supremacy Clause of the U.S. Constitution. Thus, Comcast was not required to pay the ROW fees that the City seeks in its First Counterclaim, and the interest that the City seeks in its Second Counterclaim never accrued.

WHEREFORE, Comcast prays:

A. that the City take nothing from its counterclaims;

B. that the Court dismiss the counterclaims with prejudice;

C. that the Court award Comcast its costs incurred in defending against the counterclaims; and

D. for such other relief as the Court deems just and equitable.

DATED this 16th day of October, 2020.

        DAVIS WRIGHT TREMAINE LLP

       By: */s/ John F. McGrory, Jr.*
        John F. McGrory, Jr., OSB #813115
        Mark P. Trinchero, OSB #883221
        Blake J. Robinson, OSB #084543
        1300 SW Fifth Avenue, Suite 2400
        Portland, OR 97201
        Telephone: (503) 241-2300
        Facsimile: (503) 778-5299
        johnmcgrory@dwt.com
        marktrinchero@dwt.com
        blakerobinson@dwt.com

       Attorneys for Plaintiff Comcast of Oregon II, Inc.